Okay, the next argued case is number 19-1890, Hamamatsu Photonics K.K. v. SEMICAPS Pte Ltd. Mr. Newton. Thank you. May it please the Court. My name is Jared Newton, and I am counsel for the appellant, Hamamatsu Photonics. Before I begin my argument today, I want to point out that yesterday afternoon, counsel for the appellee, SEMICAPS, notified me of an error in the joint appendix. It was a clerical mistake for two documents that were included in appendix ranges 215-220 and 433-438. We filed a notice of correction in a corrected appendix last night to fix the error, and I want to apologize that we did not catch that error and fix it earlier. Okay, thank you. I'll proceed to my argument, and there are three independent reasons to reverse or vacate the Board's decisions in the IAPR proceedings below. The first is that there is no substantial evidence to support the Board's decision that the Hamada-Priorart reference failed to disclose a plurality of samples of a response signal. As a brief background, the systems at issue in this appeal are in the field of laser-induced testings, and the systems work, the principle of operation is that a laser beam is irradiated on a circuit and that causes a change in resistance and, therefore, impacts the current or the voltage running through the circuit. Those changes are identified and used to detect the location of a fault. The 982 patent and its prosecution history inform us that the Priorart systems or explain or characterize Priorart systems as using only a single sample of the measured current or voltage, whereas the claimed invention of the 982 patent purports to use a plurality of samples. That's the key distinction that the patent and the prosecution history make over the Priorart. The Hamada reference submitted to the PTAB below discloses this same feature in the embodiment of Figure 2. What the embodiment of Figure 2 shows is that current samples are taken in synchronization with the high-level interval of the test signal. Figure 2 illustrates that test signal, and it uses the high H and low L designations to specifically identify the test signal, which is shown in Figure 2A. Paragraph 24, which is appendix page 206 of the Hamada reference, it tells us that the H and L designations are used to synchronize the current measurements so that current is measured for a given test site when the signal is high and not measured when the test signal is low. Newton, Shaw, I have one question here. I understand Figure 2 of Hamada shows the high and the low, but what exactly when we say the high level, is it the high level of what? The level of the signal that's being broadcast? Yes, and the signal as we see... High level, exactly. The high level refers to the high portion of the LSI testing on Figure 2A. I'm referring to appendix page 212, Figure 2. And what we see for the test signal is a square wave, and it goes from high to low. The high level is the block where it's higher up above. Okay. In other words, it has a higher frequency? Is that the idea? No, because it's a square wave, it likely refers to a on or off, so the test signal is being applied to the circuit when it's high, and then it's off or zero when it's low. Okay, thank you. That's helpful. Counsel, this is George Lurie. Yes, Your Honor. You've got a pretty substantial burden on what the disclosure of Hamada is. That's a substantial evidence burden. It seems to me the question of qua, as a printed publication, is a stronger point for you. But the board found that there was sort of a gap in the evidence, and your client failed to produce a CD ROM that contained qua. Why don't you talk about that? Sure, I'm happy to do that. The issue with qua, we disagree that there is a gap in the evidence. What the case law tells us about this question of whether a reference qualifies as a printed publication, whether it was publicly accessible, is that we look at the facts and circumstances of each case separately. In this case, we have three declarations from three different witnesses, all talking about the same paper, the qua paper. We have Mr. Tan's declaration who said, attached the paper to his declaration and said, I received this paper. It's a true and correct copy of what I received on a CD ROM that was passed out at this industry conference, which is the IPFA 2006 conference. But didn't the board find that there was no indication as to the date on the copy of the paper that was submitted? What the board said was that Mr. Tan did not draw a sufficient tie between the paper and the CD ROM. Indeed, exactly so. And I believe that gap, I didn't see where that gap was plugged, was it? Yes, it was plugged in Mr. Tan's testimony where he said, the paper that I'm attaching to my sworn declaration as an exhibit, this is a true and correct copy of the paper that was disseminated at the conference. But he didn't say when the copy was made, whether that was the IEEE publication copy or whether it was a copy of something that was handed out at the conference. Wasn't that a distinction that was drawn? The board made that observation, but there's not a case from this court that says the actual paper, it's the physical copy that was handed out at the conference. But it's a question of date. It's a question of proving that it was handed out and the date of the paper, not a copy of something that was available online a few months later. Isn't that the problem? A failure of proof? No, I don't see that as a failure of proof at all, Your Honor. And if we look at the totality of the evidence that's submitted here, we have three witnesses talking about the exact same paper. Mr. Tan said, I received it on a CD-ROM. Here is a true and correct copy of what I received. But no CD-ROM. That testimony is not cross-examined. Didn't the board also point out that no CD-ROM was produced in evidence? That's correct. The board found that the CD-ROM was not produced, but we're talking about the paper itself, which is the prior art reference. And we have Mr. Tan's testimony saying, this is the paper that was on the CD-ROM I received. That was undisputed. He said, this is a copy of the paper, but he didn't say when the copy was produced. Isn't that the question? There's a few months gap. I don't think it's a question based on the fact of the case or under this court's precedent. I'll refer to the Microsoft v. Parallel Networks. I'm sorry, I'll refer to the Suffolk Technologies v. AOL case, which is 752 F. 3rd, 1358. And there, what we had was a reproduction of a user, online user group post. And the evidence was disputed by the other side because they said that the post was a second-hand, quote, second-hand reproduction of an internet news group. But the court said that didn't defeat the printed publication of the public accessibility requirement because there was witness testimony saying, this is a copy of the post that I created and that was on the website. And that's what we have in this case. We have Mr. Tan saying, this is a copy of the paper I received. And it's corroborated by testimony, not only from Mr. Grenier, the IEEE representative, who said, yes, this paper was made available no later than the last day of the conference, and from Dr. Kwa himself, who is the lead author of the paper, and who said, same thing, same paper. I presented this paper at the conference and this paper was published as part of the conference proceedings. And what the board did was it looked at these three declarations in isolation. And frankly, the board did not factor in Mr. Kwa's declaration, but it looked at Mr. Tan and Mr. Grenier in isolation and said, oh, well, here's a problem we have with Mr. Tan. He did not provide us with the CD-ROM itself. But it didn't then look at Mr. Tan's undisputed testimony in the context of what Mr. Kwa said and what Mr. Grenier said, which is the exact same paper. Again, all three witnesses talking about the exact same paper.  and made available to participants at the conference. I want to reiterate Judge Shaw here. Getting back to the discussion you were having with Judge Newman and Judge Lurie on this point, this Kwa issue really strikes me as a situation where a careful, good-faith trier of fact could look at this and come out either way. I think an argument could be made for what you're saying, that when you put everything together, the reasonable conclusion is that the reference was at the conference and that it was there. On the other hand, one could also say, well, you know, there is this gap there, and can we really step in as an appellate court and say the board was wrong to take one view, namely the gap, as opposed to the other view, a reasonable inference, on the other hand? Yes, we believe and respectfully request that the court does step in, and the key reason why is that this testimony from Mr. Tan, Mr. Grenier, and Dr. Kwa, it's undisputed. These witnesses were not cross-examined or deposed. Their credibility was not called into question, and SEMICAPS did not put forward any evidence that would suggest what all three witnesses are saying about this same paper that it was presented and made available at the conference. SEMICAPS did not introduce evidence to show that they were wrong or suggest that they were wrong in any way, and so I respectfully disagree that looking at the totality of that evidence, a reasonable trier of fact can determine that the paper was not handed out at this conference proceeding and included among the conference proceedings that were put on the CD-ROM and given to conference participants at the time. And with that, I'll reserve the rest of my time for rebuttal, unless there's any other questions. Okay, any more questions at the moment for Mr. Newton? No. Okay. No. We'll hear from Ms. Chan. May it please the Court. Thank you, Your Honors. I think we've hit the... I think it was Judge Schall that hit the point on the head, which is when we're asking whether there is substantial evidence, we have to look at that through the lens of what the burden of proof was in the IPR proceedings. And here it was Hamamatsu that bore the burden of proof on invalidity. It bore the burden of coming forth with evidence to prove that the qua reference that they are relying on was in fact published before the critical date. So if I can turn the Court's attention to Appendix 215, this is the qua paper that Hamamatsu is relying on. And this is why we have had Hamamatsu correct the appendix, because if you notice in the bottom of Appendix 215, there is no publication footer on it. The original and proper document that should be in here should have an IEEE publication footer on it. And so what we talk about in the evidence that Mr. Newton keeps saying, he keeps saying that all the declarations from Mr. Tan, Mr. Grenier, and Mr. Qua all say that this document, the one that should have the IEEE footer, was the exact one that was available at a conference in July 2006. But what we actually look at when we look at the evidence is there is no testimony and there is no evidence that, and that's what the board found, that there was this evidentiary gap that this document, that's Appendix 215, when corrected, that will have the IEEE footer on it. There is no evidence and no witness testifying that that exact document, the one that's being relied on for invalidity in this case, was available and was distributed prior to the critical date. The other side of the argument is that I think that there was no dispute on either side that this paper was presented at the conference. So the question is, when did it become a printed publication under the law? I think what is not disputed is that Qua did a paper at the conference. What we need to have proof of and what the board was looking for proof of is that this particular publication that Hamamatsu is relying on as the prior art reference, that that was somehow made publicly available or published either at the conference or sometime before the November 5th critical date. The only evidence we have of publication of the document that Hamamatsu is relying on is the Grenier Declaration, where if you look at Appendix 421, this is Mr. Grenier attaching a copy of this Qua paper to his declaration, and this one has the proper IEEE footer on it. And in the rest of his declaration, he says this was published by IEEE, and if you look at the abstract, the publication date is November 30th, 2006. So the only publication date for the paper that Hamamatsu is relying on is a November 30th, 2006 date. Mr. Newton keeps saying that the Tan Declaration, that Mr. Tan in his declaration says, the document I attach here is a true and correct copy of what I received at the conference, and that is not what he said. And that is the problem that the board found. Again, if you look at the Tan Declaration at Appendix 428, Paragraph 8, he says attached at Exhibit B is a true and correct copy of, and he says title of a document. And so if you look at what he actually attaches on Appendix 433, and again this will have to be the corrected document that has the footer, it is the document, again, with the IEEE publication footer. So again, the one true and correct copy that Mr. Tan attaches to his declaration is a true and correct copy of a document that has evidence of a publication date of November 30th. He does go on to say there was, you know, I received a CD-ROM at a conference with ICWA paper, but he never makes that connection. That's where the evidentiary gap is. He never says that the true and correct copy of Exhibit B is exactly what I printed from the CD-ROM, or I checked and it's exactly what was on the CD-ROM that I received in July of 2006. And in fact, he couldn't say that, because if you look at, if we looked at the proper, the corrected Appendix 433, you'll see that it has the IEEE publication date, again, which is November 30th, 2006, which is late. So everything that we have has a statement about what we know to be true, which is the IEEE paper that Hamamatsu is relying on with publishing the history. Can I ask you a question, please? Judge Schall here. This, I think, seems to me to be a close question, and I'm going to sort of turn it around a little bit. If the board had come out the other way and had said, we recognize that there is this gap here, which you've just focused on understandably, yet we feel that in the totality of the circumstances and looking at all the evidence, we can conclude as an inference that in fact the article was on the CD-ROM that was distributed in July of 2006. Would that be a conclusion that would be lacking in substantial evidence? It would, again, depend on the totality of the circumstances, but I will point out that there is a slight difference when you flip the situation because when we talk about substantial evidence on the appellate court level and you're reviewing the board's decision at the appellate court on substantial evidence, you're asking whether a reasonable fact finder could have arrived at the board's decision, but you're also asking, could they have arrived at that decision through the underlying burden of proof? And the underlying burden of proof rests with Hamamatsu. So all things being equal, Hamamatsu has to tip the scale one direction. So even, I think, if the board found it was equal evidence, but they decided to go with Hamamatsu, perhaps in this situation there wouldn't be substantial evidence because Hamamatsu bore the burden of proof. In our situation here, SEMICAPS did not have the burden of proof. It could submit no evidence and say that it is absolutely Hamamatsu's burden to come forth with evidence, and if it doesn't, and it doesn't meet the weight of a preponderance of evidence, then it fails as an evidentiary matter. And I think that's exactly what happened here. And since we do have our situation, I think with the burden of proof and with the substantial evidence standard being that a reasonable fact finder could have arrived, we're asking whether looking at all the evidence in the record, a reasonable mind could, as the board concluded, say there was not enough evidence to show that this exact copy of the QAW paper that's being relied upon with the IEEE letter was publicly available before the critical date. Thank you. And unless the panel has any questions specific to the Hamamatsu reference or anything else regarding QAW, I have nothing further to add. Okay. Any more questions from the panel? Did Shaw? No. Did Lurie? No. Okay. Thank you, Ms. Chang. And we'll hear from Mr. Newton on rebuttal. Thank you, Judge Newman. So first I want to talk about the burden of proof and standard of review. The ultimate decision of whether a prior art publication like QAW qualifies under 102B as a printed publication is a legal question that gets de novo review on appeal. And the burden of proof, as counsel mentioned, in the proceeding below was a preponderance of the evidence. And when you think about that and you look at that standard in the context of the evidence that was presented below, there's no question in my mind that the preponderance of evidence standard was satisfied because what we have, again, are three declarations from three witnesses talking about the same paper giving consistent testimony and no evidence going the other way. So it's not even a 51% versus 49% question. It's all of the evidence is going to show that this paper was presented at the conference and there's nothing in the record to show that it wasn't. And counsel said... Well, there's a copy in the record. If that's the IEEE copy, doesn't that go the other way? I don't think it does because one critical thing that counsel said during her argument is that it's not... She was asked, is it disputed that this paper, whether it's a copy pulled off the IEEE database, is there a dispute that this paper was presented at the conference? And she did not dispute that. And that's not an issue that was disputed below. We're accepting that it was orally presented, that there was... that the witnesses who said they heard the paper and they even said that they have a CD-ROM. Whether a CD-ROM copy is a printed publication is a different question. But the board said, all right, where is it? Where's your evidence? Nobody had the CD-ROM. But the undisputed evidence closes that gap. And what the evidence says is that this same paper... One can look at Mr. Kwa's declaration. This is Appendix 604. Mr. Kwa said, this same paper that I presented was part of the conference proceedings. We read that in context with Mr. Grainier's declaration who said, same paper, part of the conference proceedings, made available on the last day of the conference. And then we also read Mr. Kwa's testimony in connection with Mr. Tan's testimony. And Mr. Tan said, again, undisputed, the CD-ROM that I received included copies of the papers presented at the conference, which counsel admits includes this paper, the Kwa paper, including Kwa. And so I dispute, with respect, I dispute what counsel said, that Mr. Tan doesn't draw this link between the paper he received and the paper that was on the CD-ROM. He says expressly that. He says, here's the paper attached as Exhibit B. This is Kwa. The CD-ROM that I received had all of the papers presented at the conference, including Kwa. But you're asking us to hold that this is a printed publication and there's no copy of the printed, there's no printed publication in evidence. I respectfully disagree, Your Honor. I respectfully disagree. The copy that he received, he said, this is what was on the CD-ROM. And there may be some confusion about whether it has a publication date listed on it. It doesn't have the November 30th publication date that it was added to the, and I'm referring to the corrected version that we submitted last night. It doesn't have this November 30th date. I believe that was an error and counsel misspoke. It says copyright 2006. The conference was in 2006 and it was also published to the website on 2006. But when Mr. Tan attached that copy, the correct copy, to his declaration, he said this is what was on the CD-ROM. There's no evidence in the record that CENICAPS could point to or that the board could point to to contradict or undermine that undisputed testimony. And so when we're asking, is the... With that, Your Honor, I'll respectfully stop. Well, I think you can finish your thought if you need to. Yes, I just want to tie it back to the preponderance of the evidence. When we look at Mr. Tan's statement referring to that exact paper, the one with the footer saying this was on the CD-ROM, and we look at that in connection with Mr. Tan, Mr. Grenier and Mr. Quah talking about the same paper, the preponderance of the evidence clearly establishes that this paper was publicly accessible. Is there anything else you need to tell us in rebuttal? No, Your Honor. I appreciate your time. Okay. Any more questions from the panel? No. No? No. Okay. All right. Thanks to counsel, the case is submitted.